IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELBERT R. COMPTON,

                Plaintiff,

    v.

BURTON COX,  JOLINDA WATERMAN,
DEBORAH CAMPBELL, BELINDA SCHRUBBE,         OPINION & ORDER
MARY GORSKE, PAUL SUMNICHT, ANN SLINGER,
GAIL WALTZ, BRIDGET BAYER, DONNA LARSON,       12-cv-837-jdp
CHRISTINE DE YOUNG, JEFFREY MANLOVE,
MARY MILLER, RICHARD HEIDORN,
DOUGLAS ARMATO, THOMAS GROSSMAN,
and MARGARET ANDERSON,[1]

                Defendants.

---

In this case, plaintiff Elbert Compton, a prisoner currently housed at the Waupun Correctional Institution, alleges that prison officials and outside medical personnel have failed for years to provide adequate medical treatment for a finger he broke while playing basketball.

The two sets of defendants in this case (Wisconsin Department of Corrections officials and private medical professionals) have filed motions for summary judgment based on Compton's failure to exhaust his administrative remedies. Because Compton failed to properly exhaust many of his claims, I will grant the DOC defendants' motions in some respects. But some of his claims against the DOC defendants and all of his claims against private medical personnel survive this round of summary judgment. Because the substantive issues in this case will likely boil down to expert medical testimony, I will grant Compton's

---

[1] I have amended the caption to reflect the full names of the defendants.

motion to recruit counsel, and strike the current schedule so that the court can find counsel for him.

**A. Claims**

The court granted Compton leave to proceed on the following claims under both Eighth Amendment and medical malpractice theories:

- In June 2008, defendant Dr. Burton Cox advised Compton that nothing could be done for him and that his finger "would have to remain in its deformed state"

- The following defendants failed to take to take any action to help him after he complained about prolonged pain from his injury: (1) defendant Nurse Deborah Campbell, in June 2008; (2) defendant Nurse Jolinda Waterman, in June and July 2008; (3) defendant Health Services Unit manager Belinda Schrubbe, from December 2008 to June 2011 and October 2011 to January 2012; (4) defendant Nurse Mary Gorske, in March 2010 and March 2011; (5) defendant Dr. Paul Sumnicht, in June, August, and September 2011; and (6) defendant nurse Ann Slinger, in June 2012

- In August and November 2013, defendant Nurse Gail Waltz did not directly treat his infection or severe pain

- In August 2013, defendant Nurse Bridget Bayer refused to see him or take other action regarding his pain

- In September 2013, defendant Nurse Donna Larson would not take action regarding his infection

- Twice in September 2013, defendant Nurse Christine De Young delayed in treating his infection

- In November 2013, Dr. Jeffrey Manlove saw him but did nothing to assess his problems or address his pain

Compton was also granted leave to proceed on the following claims under a medical malpractice theory only:

- On April 24, 2007 (the date of Compton's injury), defendant Nurse Mary Miller did not reset his broken finger

- In April 2007, defendant Dr. Richard Heidorn refused his requests to reset his finger properly or send him to a hospital and failed to provide him adequate pain medication

2

- In April and May 2007, defendant Dr. Douglas Armato misdiagnosed his injury

- In September 2011, defendant Sumnicht refused to refer him to a bone specialist

- In August 2013, defendants Dr. Thomas Grossman and Nurse Practitioner Margaret Anderson botched his surgery

## B. Exhaustion

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The administrative exhaustion requirement is mandatory, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and "applies to all inmate suits," *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Its purpose is not to protect defendants but to give prison officials an opportunity to resolve complaints without judicial intervention. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537-38 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation").

Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require," *Pozo*, 286 F.3d at 1025. However, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

1. **DOC defendants**

I begin with the exhaustion motion filed by the DOC defendants. The parties agree that Compton filed four grievances about his finger or associated pain, and that he failed to fully exhaust his first grievance, filed in 2007. The parties disagree whether Compton's third grievance (No. WCI-2012-16515) was properly exhausted.

In that grievance, Compton stated that in 2008 defendant Cox told him there was nothing he could do to treat his finger. When he complained about continuing pain, Nurses Waterman and Campbell asked Compton what Cox told him about the problem. Compton reiterated Cox's statement that he would not do anything to help him, but the nurses walked away rather than provide any treatment. Dkt. 68-2, at 8. The grievance was rejected as untimely because it concerned events from four years earlier. Compton appealed but the appeal was dismissed.

Compton argues that the grievance was erroneously rejected, because "it is clear that plaintiff was complaining about an *ongoing* denial of medical treatment rather than once isolated incident," even though the date he provided in the "date of incident" box on the form was June 23, 2008. Dkt. 84, at 5 (emphasis added). He cites to *Edwards v. Schrubbe*, 807 F. Supp. 2d. 809, 812 (E.D. Wis. 2011), in which the court concluded that grievance examiners incorrectly focused on the date mentioned in the "date of incident" box rather than the actual details of the grievance narrative. He argues that this grievance was improperly rejected as untimely under *Edwards* and this it should count to exhaust his claims from 2008 to 2012.

Under *Edwards*-type cases, I could consider a grievance properly exhausted if it was clear that grievance officials unfairly rejected it. But the facts in *Edwards* were much different

4

from the current case, and the officials reviewing Compton's grievance reasonably interpreted his grievance.

In *Edwards*, an inmate repeatedly requested treatment for vitiligo (a disease causing the loss of skin pigmentation), and filed a grievance stating that he had been repeatedly turned down for treatment. *Id*., at 811. The inmate filled out the "date of incident" box on the grievance with a date more than 14 days before he filed the grievance. *Id*. The court concluded in part that the inmate properly exhausted his grievance because prison officials unreasonable interpreted the scope of the grievance in rejecting it:

> The institution-complaint examiner, the reviewing authority, and the defendants here have all taken an unreasonably narrow view of plaintiff's inmate complaint by focusing exclusively on the date plaintiff wrote in the box labeled "date of incident or denial of request." Reading the complaint as a whole, it is clear that plaintiff was complaining about an ongoing denial of medical treatment rather than one isolated incident that occurred on July 6, 2010. Indeed, the complaint states that plaintiff had made repeated efforts to resolve his grievance with the medical staff at the prison, most recently by sending a letter (apparently in accordance with the institution-complaint examiner's advice) to the manager of the health-services unit on July 14 or 15, 2010. Plaintiff explains that he waited a few weeks for a response from the manager, and that he filed the inmate complaint once he concluded that the manager was ignoring his letter. Thus, the entirety of the complaint reveals that plaintiff promptly filed an appropriate grievance through the proper channels once he realized that he would not be able to resolve his grievance with the medical staff informally. This was proper exhaustion.

*Id*. at 812-13 (footnote omitted).

The facts of our case are much different. Nowhere in his grievance does Compton suggest that he was complaining about an ongoing lack of care from prison officials. Rather, he mentioned discrete events occurring four years earlier, which would have led any reasonable reviewer to think that Compton was complaining only about events from 2008. If

5

Compton meant to complain about an ongoing lack of care, all he would have had to do was say that in his grievance, or refer to more recent events. I conclude that the grievance was properly rejected, and thus it could not have served to exhaust any of his claims in this lawsuit.

This leaves Compton's second and fourth grievances:

- WCI-2011-19644—received October 5, 2011: Compton stated that he requested to see a bone specialist because of his deformed pinky finger, which had caused him severe pain since the injury. He also stated that his requests to see the HSU manager were denied, that he has "been complaining since it occur[ed] on 07" and that his pain had become unbearable. Dkt. 68-3, at 11.

- WCI-2013-18211—received September 18, 2013: Compton stated that on September 13, 2013, he told defendant De Young that he was still in severe pain and showed her his swollen finger following his August 2013 surgery. De Young referred Compton to HSU for X-rays. This resulted in defendant Manlove prescribing him medication for an infection. But he continued to be in pain and prison officials kept discontinuing his pain medication even though hospital staff stated that he should have them until his finger was fully healed. Dkt. 68-5, at 10.

Compton contends that these grievances successfully exhausted *all* of his claims (dating back to 2007) because each defendant's conduct has been part of one long continuing course of action. *See* Dkt. 84, at 6 (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing.")). Separate complaints about particular incidents are required only if the underlying facts or the complaints are different. *Id*.

But Compton misconstrues *Turley* to mean that an inmate could exhaust a claim about the *first* act of continuing misconduct by filing a grievance about a *later* act of continuing misconduct taking place years later. Nothing in *Turley* suggests that a relatively recently filed grievance can retroactively exhaust claims about far earlier misconduct. Rather,

6

*Turley* stands for the proposition that once a grievance is filed about part of a pattern of misconduct, a prisoner may not be required to file *subsequent* grievances for later instances of misconduct fitting within that pattern. *Id*. ("Thus, once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement.").

Because Compton did not fully exhaust a grievance until his October 2011 inmate complaint, he failed to exhaust his claims regarding events before September 2011. I will dismiss all of those claims without prejudice for Compton's failure to exhaust them. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). He can refile the claims if he can successfully exhaust them, but he may now find it impossible to file a proper grievance on those because they happened so long ago. Because all of the claims against defendants Cox, Campbell, Waterman, Gorske, Miller, and Heidorn pertain to events taking place before Compton's first exhausted grievance, I will dismiss each of them from the case.[2]

That leaves the claims concerning events that followed Compton's second and fourth grievances. The mere fact that Compton filed grievances about certain aspects of his medical care does not mean that every claim about his care has been exhausted under *Turley*. Compton was still required to "alert[] the prison to the nature of the wrong for which redress

---

[2] This also shows Compton's failure to exhaust his claims against defendant "Douglas Armato." But Armato has not appeared in this case and thus has not raised the exhaustion defense on his own behalf. The court told Compton that it would treat Armato as a "John Doe" defendant because the state was unable to identify an employee by that name. Dkt. 25, 30. Compton was informed that he would have to use discovery requests to determine this defendant's true identity. But Compton never submitted an amended complaint renaming this defendant. At this point, I conclude that Compton has abandoned his claims against Armato, and I will dismiss him from the case.

is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Wisconsin Administrative Code § DOC 310.09 requires that a grievance "clearly identify the issue." Compton's grievances served to exhaust only claims that are closely related to the issues discussed in those grievances, because those are the only problems that Compton brought to prison officials' attention. *Strong*, 297 F.3d at 650 ("Prisoner must "object intelligibly to some asserted shortcoming"). "[T]he standard is whether the offender complaint would put an official on notice of the plaintiff's claim." *Wille v. Pugh*, No. 13-cv-1024, 2015 WL 5254532, at *6 (E.D. Wis. Sept. 9, 2015). This does not mean that he needs to name each specific official, but he does have to put prison staff on notice about a particular problem. *Jones v. Bock*, 549 U.S. 199, 219 (2007) (exhaustion requirement is designed "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued").

Defendants concede that the October 2011 grievance properly exhausted Compton's "limited" claims about defendant Sumnicht's and Schrubbe's September 2011 refusals to seek treatment by a bone specialist, but they contend that the grievance does not exhaust Compton's claims against defendants Gorske and Slinger for failing to take any action to help him after he complained about severe pain. Also, because defendants refer to his claim about the bone specialist as "limited," I take them to be saying that Compton exhausted only his claim about a referral to an outside specialist, rather than his claims against Sumnicht and Schrubbe for lack of pain treatment.

I have already concluded above that defendant Gorske should be dismissed because her alleged involvement in failing to assist Compton predated his 2011 grievance. By the same token, Compton's claims against Sumnicht and Schrubbe predating September 2011 must also be dismissed. But I conclude that Compton's grievance does exhaust the remainder

of his claims about pre-surgery treatment of his pain. Compton was clearly complaining about his continuing severe pain. Although he did not explicitly state that medical staff were denying his requests for pain treatment, he did say that he had been "complaining since it occur[ed]" and that he continued to have severe pain. The only reasonable inference from those statements is that his complaints were about pain treatment in general, not just a request to see a specialist. Also, the complaint examiner reviewing the grievance considered pain treatment in his report, stating that Schrubbe told him, "'Patient did complain of pain when working out and writing letters or holding a fist. Patient did not want Ibuprofen, he claimed it did nothing. Patient was given Gabapentin.'" Dkt. 68-3, at 2. Accordingly, I conclude that he put prison staff on notice about the lack of adequate pain treatment and thus properly exhausted those claims.

Some of the alleged lack of treatment for pain (against Schrubbe and Slinger) postdated his grievance, so obviously those incidents were not mentioned in the grievance. But that is where *Turley* comes in. It was not necessary for Compton to continue to file grievances about his pain treatment, because they were addressed in his 2011 grievance. Therefore, I will deny defendants' motion for summary judgment as it pertains to Compton's claims from September 2011 to the date of his surgery, regarding defendants Sumnicht, Schrubbe, and Slinger.

Compton's fourth grievance concerned his post-surgery pain treatment, and was filed on September 18, 2013. The grievance mentions defendant Manlove by name, and defendants concede that the grievance serves to exhaust Compton's claims against Manlove. But Compton contends that this grievance exhausts all of his claims regarding his post-surgical treatment, even though many of his claims concern lack of adequate treatment well

9

before any events mentioned in the grievance. Defendants argue that Compton's grievance did not serve to exhaust claims about the defendant nurses because it did not mention them by name. They also argue that he should have filed a grievance about his August 2013 treatment in August, which I take to be an argument that the grievance was untimely concerning his August 2013 claims.

Compton was not required to list defendants by name in his grievance, *Jones*, 549 U.S. at 219, and he does state that he had been suffering through an infection and that "they keep discontinuing my pain meds." Dkt. 68-5, at 10. That was sufficient to put prison officials on notice that medical staff was failing to provide him with adequate infection and pain treatment. But defendants are correct that Compton's grievance in mid-September was filed too late to properly exhaust claims against officials who had acted in August. Therefore, I will grant defendants' motion regarding Compton's claims about Waltz's and Bayer's August 2013 treatment. Bayer will be dismissed from the case.

But the grievance is arguably timely regarding his claim against defendant Larson (for failing to help Compton after he made a September 3, 2013 request),[3] and definitely timely regarding his claim against defendant De Young (for failing to help him on September 10). Although he does not explicitly mention these events in his grievance, his statements that he had been suffering through a painful infection since the surgery is enough to exhaust these claims. Under *Turley*, I will also deny defendants' motion regarding De Young's failure to help Compton on September 25, and defendant Waltz's failure to help him in November, because those claims involve the same continuing problem.

---

[3] Defendants do not factually develop whether Compton's grievance postdated his interaction with Larson by more than 14 days, so they have failed in their burden to show that the 14-day deadline should apply.

### 2. Defendants Grossman and Anderson

In their exhaustion motion, non-DOC defendants Grossman and Anderson note that that none of Compton's four grievances mention their alleged malpractice. This matters only if Compton is required to exhaust claims against private health care providers working outside the prison. Defendants contend that Compton must still exhaust his claims against them because they are agents of the DOC, as contemplated by the Wisconsin Administrative Code:

> Exhaustion of administrative remedies. Before an inmate may commence a civil action or special proceedings against any officer, employee *or agent* of the department in the officer's, employee's or agent's official or individual capacity for acts or omissions committed while carrying out that person's duties as an officer, employee or agent or while acting within the scope of the person's office, the inmate shall exhaust all administrative remedies that the department of corrections has promulgated by rule.

Wis. Admin. Code. § DOC 310.05 (emphasis added). Defendants state that their employer, Agnesian Healthcare, entered into a contract with the DOC to provide care to inmates upon referral by DOC staff, and that Compton's surgery was a result of that referral.

Compton responds, conceding that he is required to exhaust claims against agents of the DOC, but argues that he had no way of knowing that a contract existed between the DOC and Agnesian Healthcare, and thus he did not know that they were agents of the DOC. He cites to an Eastern District of Wisconsin case considering this issue—against the same defendants, no less—in which the court concluded that although the exhaustion requirement applied to the healthcare providers at issue, the claims should not be dismissed because "the circumstances effectively prevented [the inmate plaintiff] from knowing that he needed to

11

exhaust his remedies as against the Agnesian defendants." *Saddy v. Agnesian Health Care*, No. 13-CV-519-JPS, 2014 WL 4656117, at *2 (E.D. Wis. Sept. 16, 2014).

In reply, defendants argue that the case is not relevant because the claims in *Saddy* involved federal law Eighth Amendment claims rather than state law malpractice claims, and the broader scope of the Wisconsin version of the Prison Litigation Reform Act dooms Compton's claims.[4] Dkt. 70 at 2-3 (citing *State ex. rel. Cramer v. Wisconsin Court of Appeals*, 2000 WI 86, 236 Wis. 2d 473, 490-91, 613 N.W. 2d 591 (2000) ("Although litigation about prison conditions served as the original impetus for passage 1997 Wis. Act 133, the final version of the bill illustrates that the legislature intended to address the costly problems caused by prisoner litigation more expansively than the federal law.")).

But Compton is free to use federal PLRA case law in analyzing the Wisconsin version. When it suited them in their brief-in-chief, defendants did so as well. *See* Dkt. 62 at 8-9 ("In interpreting Wisconsin's PLRA on the issue of exhaustion, courts may take guidance from the United States Supreme Court's interpretation of the Federal PLRA (42 USC 1997e), upon which the Wisconsin PLRA is based.") (citing *State ex. rel. Hensley v. Endicott*, 2001 WI 105, 245 Wis. 2d 607, 618, 629 N.W. 2d 686). The point in *Saddy* was that the inmate's administrative remedies were not truly "available" because he had no reason to know that there was an agency relationship between the state and the outside medical professionals. 2014 WL 4656117, at *2. The Wisconsin PLRA, just like the federal version, requires that a

---

[4] The federal PLRA's exhaustion requirement does not apply to state law claims. *See* 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.")

prisoner exhaust "available" administrative remedies, so there is good reason to consider *Saddy* on this issue. *Compare* Wis. Stat. § 801.02(7)(b) *with* 42 U.S.C. § 1997e.

Defendants argue that the Wisconsin PLRA is broader than the federal version with respect to the barriers it raises against prisoner litigation, but the case they cite for that proposition, *State ex. rel. Cramer*, 2000 WI 86, is not a case about exhaustion principles. In *Cramer*, the Wisconsin Supreme Court noted that the Wisconsin PLRA's restrictions cover more types of cases than the "conditions of confinement" typically seen under the federal PLRA. Defendants do not cite to any authority for the proposition that the Wisconsin PLRA's exhaustion requirements differ in any meaningful way from the federal PLRA other than to reiterate that complaints against agents of the state must also be exhausted.

Rather, defendants note that "Wisconsin case law on the issue of whether exhaustion requirements apply to private healthcare providers in Wisconsin is sparse," Dkt. 62, at 9, and instead go on to apply federal cases in an effort to show that claims against private medical providers must be exhausted. *See West v. Atkins*, 487 U.S. 42 (1988); *Rodriguez v. Stevie*, 2:11-CV-515, 2013 WL 1194720 (W.D. Mich. Mar. 22, 2013); *Hallock v. Ill. DOC*, 10-CV-0060-DRH, 2010 WL 2574163 (S. D. Ill. June 23, 2010); *Giampaolo v. Bartley*, 07-526-DRH, 2010 WL 2574203 (S.D. Ill. June 23, 2010). But from the face of these opinions it is not clear that any of them involve private medical staff performing procedures outside the prison walls, which is the main reason an inmate might think that the grievance process does not apply to those medical professionals' actions. It is defendants' burden to show that exhaustion applies in our case, and without further development of these cases' relevance to Compton's circumstances, I conclude that the *Saddy* court's analysis is closer to the mark: Compton's

administrative remedies were unavailable to him because he had no reason to think he needed to file a grievance about private, outside medical staff.

Also in their reply brief, defendants cast aside their earlier argument, stating that their contract with the state is irrelevant, because under Wisconsin authorities the hospital should be considered part of the Waupun Correctional Institution for legal purposes, and they were operating as "statutory adjuncts of the prison staff." Dkt. 79, at 5 (citing Wis. Stat. § 302.02(1m) ("Every activity conducted under the jurisdiction of and by any institution or facility listed under this section, wherever located, is a precinct of the prison, and each precinct is part of the institution."); *State v. Cummings*, 153 Wis. 2d 603, 606, 451 N.W.2d 463 (Ct. App. 1989) (applying predecessor to § 302.02) ("The medical treatment Cummings received at the hospital was an activity conducted under the jurisdiction of the Waupun Correctional Institution. Accordingly, the hospital became a 'precinct' of the prison and 'part of the institution.' A prisoner remains 'confined' to a state prison when he is kept under guard while receiving medical treatment at a hospital.")).

I would usually disregard this line of argument because it was raised for the first time in a reply brief. But Compton has filed a sur-reply, Dkt. 83, which I will accept. He argues that defendants' reliance on statutes outside the PLRA make his point for him: prisoners did not have notice that they were supposed to file grievances about this type of claim. I agree with Compton.

Defendants cite to no authority applying § 302.02 or *Cummings* to the exhaustion context, and at some point, the lack of clarity in the exhaustion regulations renders them unavailable to inmates. *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) ("[A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this

14

situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. As the Solicitor General put the point: When rules are 'so confusing that . . . no reasonable prisoner can use them,' then 'they're no longer available.'"). Prisoners should not need a law degree and an understanding of every corner of Wisconsin statutes and case law to understand what claims need to be exhausted. If the DOC wants prisoners to exhaust claims against outside medical professionals, they should say so in their prison handbooks or the DOC exhaustion regulations.

## C. Remaining motions

There are several other pending motions. Defendants Grossman and Anderson have filed a substantive motion for summary judgment on Compton's malpractice claims against them, largely arguing that Compton cannot prove his claims because he does not have an expert medical testimony to support his claims. Dkt. 94. Compton has filed a series of motions for an extension of time to file a response. Dkt. 98, 103, & 104. He has also filed a motion for the court's assistance in recruiting him counsel, Dkt. 86, and a motion to appoint an expert to provide medical testimony, Dkt. 101. The DOC defendants have filed a motion to stay the dispositive motions deadline pending a ruling on the exhaustion motions. Dkt. 89.

I agree with defendants Grossman and Anderson that at present, Compton almost certainly cannot succeed on his malpractice claims without expert medical testimony. Rather than dismiss the case for this reason, I conclude that the appropriate course of action is to recruit counsel for Compton who can in turn attempt to locate an expert for the purposes of opposing Grossman and Anderson's motion for summary judgment and an eventual motion filed by the remaining DOC defendants. I will strike the remaining deadlines, and after counsel is located for Compton, reset a dispositive motions deadline and trial date.

ORDER

IT IS ORDERED that:

1.  Defendant DOC employees' motion for summary judgment based on plaintiff Elbert Compton's failure to exhaust his administrative remedies, Dkt. 66, is GRANTED IN PART and DENIED IN PART. The following claims against DOC defendants survive summary judgment:

    -   Belinda Schrubbe (for her actions from October 2011 to January 2012 only)

    -   Paul Sumnicht (for his actions in September 2011 only)

    -   Ann Slinger

    -   Donna Larson

    -   Gail Waltz (for her actions in November 2013 only)

    -   Christine De Young

    -   Jeffrey Manlove

    The remainder of plaintiff's claims against the DOC defendants are DISMISSED without prejudice.

2.  Defendants Cox, Campbell, Waterman, Gorske, Bayer, Miller, Heidorn, and Armato are DISMISSED from the case.

3.  Defendants Thomas Grossman and Margaret Anderson's motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies, Dkt. 61, is DENIED.

4.  Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 86, is GRANTED.

5.  Plaintiff's motion for appointment of an expert, Dkt. 101, and his motions for an extension of time to file an opposition to defendants Grossman and Anderson's motion for summary judgment, Dkt. 98, 103, & 104, are DENIED as moot.

6.  The DOC defendants' motion to stay the dispositive motions deadline, Dkt. 89, is GRANTED.

7. The schedule is STRICKEN, and a new schedule, including a new dispositive motions deadline, will be set after counsel is located.

Entered March 8, 2017.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge